1
2
3
4
5
6
7 **UNITED STATES DISTRICT COURT**
8 **EASTERN DISTRICT OF CALIFORNIA**
9
10

| | |
|---|---|
| NATALIO OROZCO VENEGAS, | Case No. 1:11-cv-01652-LJO-BAM-HC |
| Petitioner, | ORDER SUBSTITUTING DAVE DAVEY, ACTING WARDEN, AS RESPONDENT |
| v. | FINDINGS AND RECOMMENDATIONS TO DISMISS IN PART AND DENY IN PART THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), ENTER JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY |
| DAVE DAVEY, Acting Warden, | |
| Respondent. | **OBJECTIONS DEADLINE:** **THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the petition, which was filed on September 29, 2011.  Respondent filed an answer on December 1, 2011, and Petitioner filed a traverse on January 3, 2012.  The case was thus ready for decision as of that date.

On March 13, 2014, Petitioner filed an inquiry regarding the status of the case and for leave to exhaust additional issues.  On

1

1   March 18, 2014, the Magistrate Judge denied Petitioner's motion

2   without prejudice to a renewed application in which Petitioner

3   specified the issues, set forth pertinent data regarding exhaustion

4   of state court remedies, and sought specific relief from the Court.

5   The order also informed Petitioner that otherwise, the case was

6   ready for decision, although the precise time of the issuance of a

7   decision was unknown due to the pendency of other cases that became

8   ready for decision earlier.  The Court's order was served on

9   Petitioner on the same date.  Although over thirty days have passed,

10  Petitioner has not renewed his application.

11      Accordingly, the case appears ready for decision.

12      I.  <u>Jurisdiction and Order Substituting Respondent</u>

13      Because the petition was filed after April 24, 1996, the

14  effective date of the Antiterrorism and Effective Death Penalty Act

15  of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v.</u>

16  <u>Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002,

17  1004 (9th Cir. 1999).

18      The challenged judgment was rendered by the Superior Court of

19  the State of California, County of Kern (KCSC), which is located

20  within the territorial jurisdiction of this Court.  28 U.S.C.

21  §§ 84(b), 2254(a), 2241(a), (d).  Further, Petitioner claims that in

22  the course of the proceedings resulting in his conviction, he

23  suffered violations of his constitutional rights.

24      Accordingly, the Court concludes that it has jurisdiction over

25  the subject matter of the action pursuant to 28 U.S.C. §§ 2254(a)

26  and 2241(c)(3), which authorize a district court to entertain a

27  petition for a writ of habeas corpus by a person in custody pursuant

28  to the judgment of a state court only on the ground that the custody

2

is in violation of the Constitution, laws, or treaties of the United States.  Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. B, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent James A. Yates, who, pursuant to the judgment, had custody of Petitioner at the Pleasant Valley State Prison, Petitioner's institution of confinement at the time the petition and answer were filed.  (Doc. 1, 13.)  Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).  The fact that Petitioner was transferred to the California State Prison at Corcoran, California (CSP-COR) after the petition was filed does not affect this Court's jurisdiction; jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.  Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990) (citing Smith v. Campbell, 450 F.2d 829, 834 (9th Cir. 1971)).  Accordingly, the Court concludes that it has jurisdiction over the person of the Respondent.

However, in view of the fact that the acting warden at CSP-COR is Dave Davey, it is ORDERED that DAVE DAVEY, Acting Warden of CSP-COR, be SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[1]

---

[1] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. It further provides that the Court may order substitution at any time, but the absence of such an order does not affect the substitution.

1    II.   <u>Introduction</u>

2        At a jury trial in the KCSC, Petitioner was convicted of one

3    count of oral copulation of a child in violation of Cal. Pen. Code

4    § 288.7(b), and two counts of lewd conduct with a child in violation

5    of Cal. Penal Code § 288(a).  (CT 153-54.)  On March 20, 2009,

6    Petitioner was sentenced to fifteen years to life for oral

7    copulation, plus a consecutive six-year term for one count of lewd

8    conduct, and a stayed term on the remaining count, for a total

9    indeterminate prison sentence of twenty-one years to life.  (CT at

10   168-75.)

11       Petitioner timely appealed to the Court of Appeal of the State

12   of California, Fifth Appellate District (CCA), claiming 1) his post-

13   arrest confession made during interrogation by law enforcement

14   officers was erroneously admitted at trial because it was

15   involuntary and thus violated due process, and it further was taken

16   in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), because

17   Petitioner did not knowingly and voluntarily waive his rights to

18   remain silent and to counsel, and 2) his right to due process of law

19   was violated because the evidence was insufficient to support both

20   of his convictions for lewd conduct.  (LD 1-3.)  On July 19, 2010,

21   the CCA rejected these claims in a reasoned decision.  (LD 4.)

22       Petitioner renewed the claims regarding the <u>Miranda</u> waiver and

23   the sufficiency of the evidence in a petition for review before the

24   California Supreme Court (CSC), which was denied on September 29,

25   2010.  (LD 5-6.)  Respondent concedes that the petition before this

26   Court was timely filed.  (Ans., doc. 13, 5.)

27       In the petition, Petitioner argues that statements he made

28   during custodial interrogation were inadmissible because they were

4

involuntary and were not preceded by appropriate waivers of rights, which violated his privilege against compelled self-incrimination protected by the Fifth and Fourteenth Amendments and interpreted by Miranda v. Arizona. He also challenges the sufficiency of the evidence to support his two convictions of committing a lewd act with a child.

III.   Factual Summary

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004). This presumption applies to a statement of facts drawn from a state appellate court's decision. Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009). The following statement of facts is taken from the opinion of the CCA in People v. Natalio Orozco Venegas, case number F057393, filed on July 13, 2010:

**FACTS AND PROCEDURAL HISTORY**

On the afternoon of March 11, 2008, C. and her three daughters were living with C.'s mother and father (appellant) in a three bedroom house in Bakersfield, California. C.'s two brothers and one sister also lived there. On the day in question, C.'s sister, N., was present in the house with her children. While C. was nursing her baby in the living room, N. expressed concern that she could not find C.'s five-year-old daughter, D. C. and N. then began looking for D. throughout the house,

calling D.'s name, but they could not find her. N. banged loudly on the locked door of the master bedroom, where appellant was, but no one responded.

Moments later, D. walked out of the master bedroom, noticeably upset. C. asked her daughter what was wrong and D. said that something had happened in the bedroom. D. explained, "[G]randpa did this, and she pointed from her mouth to her vagina." C. then ran into the master bedroom, pounded on the door of the master bathroom and yelled at appellant, asking what he had done to her daughter. Appellant made no response. C. then called the police. Appellant left the house before the police arrived, but on his way out he tried to assure C. that nothing had happened and said she could take D. to the hospital to have her examined.

Officer Marcy White of the Bakersfield Police Department was one of two officers who responded to the house that afternoon. Officer White spoke with D. in the front yard, where D. told her that appellant "had put his tongue on her, and she pointed to her vagina." D. told Officer White that this happened while she was on the floor in her grandma's bedroom. D. also told Officer White that appellant had done the same thing to her before "a lot" of times.

Police Detective Jamie Montellano also responded to the house but interviewed D. about an hour later at the police station. D. told the detective that appellant had touched her on her private parts. She said that appellant had pulled her pants and underwear down and licked her, pointing to her vagina. She said that appellant licked her "hard" this time, and added that it happened "a lot."

When D. testified at trial, she said that appellant did not touch her after all, and she had lied when she told the police officers that he did those things. She did not know why she had lied. D. remembered telling her mother that appellant licked her and pointing to the part of her body where she said that he licked her, "[b]ut he didn't." She admitted that she told the police officers the same thing she told her mother and that she also told them appellant had done it before, "[b]ut he didn't." When asked if she told the police officers he had done it "lots" of times, D. said yes "[b]ut he only did it once."

6

D. testified that she loved appellant and wanted him to come home.

On March 11, 2008, appellant was transported to police headquarters by Officer Kevin Findley. Since appellant initially indicated he wanted to speak in Spanish, Officer Ascencion Barrera assisted in questioning appellant. The interview began in Spanish, including the reading of appellant's *Miranda* rights, but soon thereafter appellant indicated he was comfortable speaking English, so the remainder of the interview was conducted in English. The interview with appellant was video recorded and played for the jury.FN2

> FN2. Written transcripts of the interview were also provided to the jury.

After reading appellant his *Miranda* rights, Officers Barrera and Findley asked appellant about what happened when D. was in the master bedroom. Appellant admitted that he locked the door to the master bedroom, but at first claimed that he did not know D. was there. After denying numerous times that he touched D., appellant gradually divulged the details of what happened. He first said that he touched D. "in back of her pants" and above her belt buckle, but not "down below." Later, appellant admitted that he pulled D.'s pants down and touched the outside of her vagina with his hand. Eventually, appellant admitted that he put his mouth on D.'s vagina and touched her butt with his hand. Appellant admitted he had done this before to D., about a month earlier. He said it had happened "[t]wo, three times," then said it was "[t]hree or four times." Appellant confided that it started about a month earlier because D. would sleep in the bed with appellant and his wife, and appellant got "feelings." He started to sleep in the garage to avoid the "feeling[s]."

Appellant testified at trial that he was pressured and confused during the police interview, so he just told the police officers what they wanted to hear. He denied that he ever touched D. in an improper way. He then explained his version of what happened on the day of his arrest. He had been asleep and alone in the master bedroom until he was awakened by the sound of knocking on the bedroom door. At some point, he decided to lock the door. He went back to sleep but was awakened by the sound of D. playing with shampoo bottles in the bathroom. He turned on the

7

television for her so she could watch cartoons, and then
he went into the bathroom until he heard N. banging loudly
on the door. He helped D. buckle her belt, opened the
bedroom door for N., went back into the bathroom to check
his cell phone messages, and then left the house for
awhile (sic). When he returned to the house, he was told
he had to go to the police station.

(LD 4, 2-5.)

IV.   Admission of Petitioner's Confession

Petitioner contends that his confession was involuntary and was

taken in violation of the protocol of Miranda v. Arizona.

A.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the

judgment of a State court shall not be granted
with respect to any claim that was adjudicated
on the merits in State court proceedings unless
the adjudication of the claim—

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

Clearly established federal law refers to the holdings, as

opposed to the dicta, of the decisions of the Supreme Court as of

the time of the relevant state court decision.   Cullen v.

Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v.

Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362,

412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407. An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable. Williams, 529 U.S. at 410. A state court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011). Even

9

a strong case for relief does not render the state court's conclusions unreasonable.  Id.  In order to obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.  The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.  Further, habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

    In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400.  Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of

producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision that was on the merits and was based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

With respect to each claim, the last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  <u>Barker v. Fleming</u>, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

Here, the last reasoned decision was the decision of the CCA.

B.  <u>The State Court's Decision</u>

The pertinent portion of the decision of the CCA is as follows:

<u>**DISCUSSION**</u>

**I. Appellant's Interview with Police Was Properly Admitted**

In a motion in limine, appellant sought to exclude the statements he made to Officers Findley and Barrera during the interrogation on March 11, 2008. Appellant argued that his rights under *Miranda* were violated because he never expressly or impliedly waived his right to remain silent, and thus the statements were inadmissible. Following a hearing under Evidence Code section 402, the trial court denied appellant's motion. Appellant contends on appeal that the trial court prejudicially erred.

In reviewing appellant's contention that his *Miranda* rights were violated, we accept the trial court's resolution of disputed facts and inferences, as well as its evaluation of the credibility of witnesses where supported by substantial evidence. (*People v. Whitson* (1998) 17 Cal.4th 229, 248.) "'Although we independently determine whether, from the undisputed facts and those properly found by the trial court, the challenged

11

statements were illegally obtained [citation], we "'give great weight to the considered conclusions' of a lower court that has previously reviewed the same evidence." [Citations.]'" (*Ibid.*)

The principles regarding a defendant's waiver of *Miranda* rights were recently summarized by the California Supreme Court in *People v. Cruz* (2008) 44 Cal.4th 636, as follows: "*Miranda* makes clear that in order for defendant's statements to be admissible against him, he must have knowingly and intelligently waived his rights to remain silent, and to the presence and assistance of counsel. [Citation.] [¶] It is further settled, however, that a suspect who desires to waive his *Miranda* rights and submit to interrogation by law enforcement authorities need not do so with any particular words or phrases. A valid waiver need not be of predetermined form, but instead must reflect that the suspect in fact knowingly and voluntarily waived the rights delineated in the *Miranda* decision. [Citation.] We have recognized that a valid waiver of *Miranda* rights may be express or implied. [Citations.]" (*Id.* at p. 667.) "[U]ltimately the question becomes whether the *Miranda* waiver was knowing and intelligent under the totality of the circumstances surrounding the interrogation. [Citations.]" (*Id.* at p. 668.)

Of critical importance to the present case, "[a] suspect's expressed willingness to answer questions after acknowledging an understanding of his or her *Miranda* rights has itself been held sufficient to constitute an implied waiver of such rights. [Citations.]" (*People v. Cruz, supra,* 44 Cal.4th at pp. 667-668; accord, *People v. Medina* (1995) 11 Cal.4th 694, 752; *People v. Sully* (1991) 53 Cal.3d 1195, 1233; *People v. Johnson* (1969) 70 Cal.2d 541, 558.) This principle was upheld in a recent opinion by the United States Supreme Court, which found an implied waiver of *Miranda* rights in the case before it, explaining as follows: "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." (*Berghuis v. Thompkins* (2010) --- U.S. ----, ---- [130 S.Ct. 2250, ----, 176 L.Ed.2d 1098, 1113].)

Here, the record reflects that at the outset of the police interview, Officer Barrera read to appellant his *Miranda* rights in Spanish, one right at a time, and asked him if

he understood such rights, and each time appellant
answered in the affirmative that he understood.FN3
Specifically, the following exchange FN4 took place:

> FN3. As the trial court noted, when appellant
> said "[u]h huh" in response to the questions
> whether he understood his rights, it was clearly
> an affirmative response because he was also,
> with each such response, nodding his head up and
> down in an affirmative manner.

> FN4. The bracketed portions were spoken in
> Spanish.

> "[Officer] Barrera: [Look I'm going to explain
> some rights that you have.]
> "[Appellant]: Uh huh.

> "[Officer] Barrera: [If you don't understand
> them ... ]

> "[Appellant]: Uh huh.

> "[Officer] Barrera: [ ... and I'll explain it to
> you.] Okay?

> "[Appellant]: Uh huh.

> "[Officer] Barrera: [The first one. You have the
> right to remain silent.]

> "[Appellant]: Uh huh.

> "[Officer] Barrera: [Do you understand?]

> "[Appellant]: [Yes.]

> "[Officer] Barrera: [Anything that you say can
> be used against you in a court of law. Do you
> understand?]

> "[Appellant]: [Yes.]

> "[Officer] Barrera: [You have the right to have
> an attorney present before and during, uh,
> before and during ... any questioning. Do you
> understand that?]

"[Appellant]: Uh huh.

"[Officer] Barrera: [If you cannot afford an attorney ... ]

"[Appellant]: Uh huh.

"[Officer] Barrera: [ ... one will be appointed to you free of charge ... ]

"[Appellant]: [Free.]

"[Officer] Barrera: [ ... before questioning if you want. Do you understand?]

"[Appellant]: [Yes I understand.]

"[Officer] Barrera: [What is your name sir?]

"[Appellant]: [Natalio Venegas.]"

At the Evidence Code section 402 hearing, the trial court watched the video recording of the interview, and heard testimony from appellant and the two officers present during the interview.FN5 On the basis of that evidence, the trial court found that appellant was adequately advised of his *Miranda* rights and, as demonstrated by appellant's affirmative responses (including the nodding of his head), understood each of his *Miranda* rights. Furthermore, the trial court found that appellant's conduct of answering the officers' questions immediately after acknowledging he understood his rights "constitute[d] a valid implied waiver of his *Miranda* Rights." (Italics added.) As is readily apparent from the record summarized above, these findings were supported by substantial evidence. And, as the United States Supreme Court and the California Supreme Court have plainly held, such circumstances are sufficient to support an implied waiver of *Miranda* rights. (*Berghuis v. Thompkins, supra,* ---- U.S. ----, ---- [130 S.Ct. 2250, ----, 176 L.Ed.2d at p. 1113]; *People v. Cruz, supra*, 44 Cal.4th at pp. 667; *People v. Medina, supra*, 11 Cal.4th at p. 752; *People v. Sully, supra*, 53 Cal.3d at p. 1233; *People v. Johnson, supra*, 70 Cal.2d at p. 558.) We conclude that the trial court correctly concluded that appellant waived his

14

*Miranda* rights and therefore the statements appellant made to the police were properly admitted.

> FN5. At no time during the interrogation did appellant say that he wanted to remain silent, that he did not want to talk to the police officers, or that he wanted an attorney. Rather, after acknowledging that he understood his Miranda rights, he proceeded to answer the police officers' questions.

(LD 4, 5-9.)

C. <u>Additional Factual Details</u>

Respondent sets forth additional facts from the record regarding the advisement of rights and interrogation.  Petitioner had been arrested, and the interview with detectives Barrera and Findley occurred while Petitioner was detained in a small room at the police station, sitting on a chair at a desk with one hand cuffed to the wall with Barrera sitting opposite him and Findley standing beside Barrera.  (LD 8 at 220-23; LD 7, 2; People's Trial Exhibit ("PTE") 1.)  The entire interview lasted just under seventy-five minutes.  (PTE 1.)  The advisement of rights in the Spanish language given by Barrera occurred at the beginning of the interview; Petitioner affirmatively nodded his head every time he uttered "Uh huh" in response to each of Detective Barrera's questions regarding whether Petitioner understood the particular right being described.  (<u>Id.</u> at 6:20-7:15.)  Consequently, as the state court expressly found, "when [Petitioner] said "[u]h huh" in response to the questions whether he understood his rights, it was

15

clearly an affirmative response because he was also, with each such response, nodding his head up and down in an affirmative manner." (LD 4 at 7 n.3.)

In a few minutes the conversation proceeded in English after Barrera complimented Petitioner on his English when Petitioner explained to Findley in English that he wanted to leave the station within two hours in order to get a print-out from the DMV for a job application. (LD 7, 7-8.)  Petitioner agreed to proceed in English. (Id. at 8.)  Detective Findley stated that if Petitioner did not understand, then Detective Barrerra would speak in Spanish.  (Id.) Throughout the entire interview, Petitioner answered all questions and never once indicated that he no longer wanted to speak or otherwise invoked his right to silence.  (Id. at 2-67.)

Petitioner responded with inconsistent answers regarding knowing why he was being questioned and whether he knew that his granddaughter had been in the room when he locked the door.  (LD 7 at 2, 8-9, 13-16, 18-19, 21, 27-29.)  Eventually he admitted that he had locked the door so that no one would walk in on him.  (LD 7, 21.)  The interview moved from English to Spanish and back to English at Petitioner's request.  (Id. at 22.)  While being questioned about the inconsistencies, Petitioner asked for some water; the detectives agreed, and they handed Petitioner a cup of water eight minutes later.  (Id. at 28-29.)  Questioning resumed after a couple more minutes, and then for twelve minutes the

detectives urged Petitioner to tell them the truth and expressed their belief that his five-year old granddaughter was not lying. (LD 7 29-44; PTE 1 at 40:15-52:14.)

Petitioner finally admitted that he had touched his granddaughter on her stomach above her waist, but he insisted that he did not touch her anywhere else. (LD 7 at 4-49.) The detectives again expressed their disbelief, noted that Petitioner was sweating, and urged Petitioner simply to talk about what had happened. (Id. at 49-50.) After acknowledging that his granddaughter "was trusting me" and that he had lost his job and was under a lot of stress, Petitioner finally admitted, "yeah I did touch her." (Id. at 50-51.) When asked where, Petitioner gestured to his crotch area. (Id. at 51; PTE 1 at 59:02.) Over the next seven minutes, Petitioner admitted that he had touched his hand to the outside of his granddaughter's vagina, he had touched his mouth to her vagina, and he had placed his hand on her buttocks. (LD 7, 52-59.) Petitioner then admitted that he had done this "same thing" to his granddaughter three or four times within the past month. (Id. at 60-66.) The interview then concluded. (Id. at 66.)

In addition to the findings of the trial court summarized in the CCA's decision, the trial court "[did] not find that the officers made any improper promises of leniency or engaged in some type of coercive or improper conduct in the course of the interview." (LD 8, 67.)

17

D.  Analysis

In order to implement the Fifth Amendment privilege against self-incrimination made binding upon the states by the Fourteenth Amendment, the Supreme Court has held that statements made in the course of interrogation while a person is in custody are not admissible in the prosecution's case-in-chief in a criminal case unless the defendant is advised that 1) he has the right to remain silent, 2) anything he says can be used against him in court, 3) he has a right to counsel before questioning and to counsel's presence during interrogation, 4) if he is indigent, counsel will be appointed for him before interrogation, and 5) the government demonstrates by affirmative evidence that the defendant voluntarily and intelligently waived his privilege against self-incrimination and his right to counsel.  Miranda v. Arizona, 384 U.S. 436, 468-75 (1966); Harris v. New York, 401 U.S. 222, 226 (1971).  No "precise formulation" is required; rather, the test is whether the warnings reasonably "conve[y] to [a suspect] his rights as required by Miranda."  Florida v. Powell, 559 U.S. 50, 60 (2010) (quoting Duckworth v. Egan, 492 U.S. 195, 203 (1989)).

The prosecution bears the burden of demonstrating by a preponderance of the evidence that the defendant validly waived his Miranda rights.  Colorado v. Connelly, 479 U.S. 157, 168 (1986).  A waiver must be 1) voluntary, or the product of a free and deliberate choice and not the result of intimidation, coercion, or deception,

18

and 2) knowing, or "'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Berghuis v. Thompkins, 560 U.S. 370, 382-83 (2010) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).  A waiver of Miranda rights may be express and formal, or implied through all the circumstances, including the words and conduct of the person interrogated.  Berghuis v. Thompkins, 560 U.S. at 383 (citing North Carolina v. Butler, 441 U.S. 369, 373 (1979)).  Specifically, a waiver may be implied through "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver."  Berghuis, 560 U.S. at 384 (quoting North Carolina v. Butler, 441 U.S. at 373).  "Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent."  Id.

Here, the trial court reasonably found that Petitioner was advised of his Miranda rights and that he indicated that he understood those rights.  Further, the trial court reasonably found that the statements subsequently made by Petitioner were not coerced or the result of deception.  Petitioner answered questions and never indicated that he wanted to remain silent or desired counsel.  Although he expressed a desire that the conversation remain confidential and appeared to request professional help, the Miranda advisement itself clearly informed Petitioner that anything he said

19

could be used against him in court.  Petitioner was not misled as to matters essential to understanding the significance of his rights or the consequences of giving a statement.  Cf., Moran v. Burbine, 475 U.S. at 423-24.

Petitioner claims here that his statements were involuntary. This claim does not appear to have been preserved as a claim separate from the claim of a Miranda violation in the petition for review filed in the CSC, where Petitioner argued the absence of a valid waiver of Miranda rights.  One reference in that petition to involuntariness occurred in the course of arguing that because he was not expressly asked if he wanted to waive his rights, "[t]he absence of such assurances raises the issue of whether appellant's statement was voluntary."  (LD 5, 6.)  The petition also referred to Petitioner's will being overborne because he misunderstood the consequences of his statement, as evinced by his comment that what he said was confidential.  (Id. at 14.)  However, these references were all made in the course of argument regarding whether or not Petitioner had waived his Miranda rights.

Here, the trial court found that Petitioner had voluntarily chosen to speak after having been informed of his rights and having indicated that his rights were understood.  The finding that the government had not engaged in any improper promises of leniency or any coercive or improper conduct in the course of the interview has

not been contradicted or rebutted.  The state court's findings of fact underlying the issue of voluntariness are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).  Cf. Rupe v. Wood, 93 F.3d 1434, 1444 (9th Cir. 1997).

A valid waiver of Miranda rights generally results in a finding of voluntariness of a confession following the waiver. DeWeaver v. Runnels, 556 F.3d 995, 1003 (9th Cir. 2009), cert. denied, 130 S.Ct. 183 (2009) (quoting Missouri v. Seibert, 542 U.S. 600, 608-09 (2004) and Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984)).  In determining whether a statement or confession was involuntary and obtained in violation of the principles of due process of law protected by the Fifth and Fourteenth Amendments, a court examines whether a defendant's will was overborne by the circumstances surrounding the giving of the statement or confession.  Dickerson v. United States, 530 U.S. 428, 434 (2000).  A court considers the totality of all the surrounding circumstances, including the characteristics of the accused and the details of the interrogation.  Id.

Here, if Petitioner's claim that his admissions were involuntary was preserved for this Court's review, then the Court concludes that Petitioner has not shown entitlement to relief in this proceeding.  The interrogation was brief, Petitioner was advised of his rights and acknowledged that he understood them, the government did not engage in coercive or improper conduct, and

Petitioner was a mature individual who never invoked his rights and instead chose to speak without counsel despite having been informed he could remain silent or have a free attorney before or during questioning.  Given the absence of coercive police activity, a finding that Petitioner's statement was "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment was not contrary to, or an unreasonable application of, clearly established federal law.  See, Colorado v. Connelly, 479 U.S. 157, 167 (1986).

In summary, it will be recommended that the Court deny Petitioner's claim of a Miranda violation as well as any preserved claim of an involuntary admission.

V.   Sufficiency of the Evidence

Petitioner argues that the evidence was insufficient to support his convictions of having violated Cal. Pen. Code § 288(a).

A.   The State Court Decision

The pertinent part of the CCA's last reasoned decision on these issues is as follows:

**II. Evidence Sufficient to Support Convictions on Counts 2 and 3**

Appellant contends there was insufficient evidence to convict him of lewd or lascivious acts against D. as charged in counts 2 and 3. The crime of committing a lewd or lascivious act upon a child requires a touching of a child under the age of 14 with the specific intent "of arousing, appealing to, or gratifying the lust, passions, or sexual desires." (§ 288, subd. (a); *People v. Davis* (2009) 46 Cal.4th 539, 606.) Here, the criminal

22

information alleged that appellant committed the act in count 2 on or about March 11, 2008 (the same day as the count 1 charge), and in count 3 "On or about and between January 1, 2008 and March 11, 2008." (Unnecessary capitalization omitted.) Because we find that both counts were adequately supported by substantial evidence, we reject appellant's challenge.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Reversal ... is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*Ibid.*)

The evidence in support of count 2 included appellant's admission that, in addition to orally copulating D. on March 11, 2008, he pulled her pants down and touched her tummy, buttocks and vagina. Appellant's admission that he touched D. in such manner on March 11, 2008, was corroborated by Detective Montellano's testimony that D. reported that appellant pulled down her pants and underwear and touched her on her private parts, and that he licked her more than one time.

The evidence in support of count 3 included appellant's admission that he had orally copulated D. three or four times before, starting about one month before the March 11, 2008, offenses when he started having feelings toward her. Appellant's admission that he committed previous acts of oral copulation on D. during that period of time was corroborated by the testimony of Detective Montellano and Officer White, both of whom testified that D. reported that appellant had done the same thing to her "a lot" or "lots" of times. We conclude there was substantial evidence to support appellant's conviction on counts 2 and 3.

As to counts 2 and 3, appellant next argues the corpus delecti of these alleged crimes was not established independent of appellant's extrajudicial statements, admissions or confessions. We disagree. "[T]he quantum of evidence required is not great, and 'need only be "a

slight or prima facie showing" permitting an inference of injury, loss, or harm from a criminal agency, after which the defendant's statements may be considered to strengthen the case on all issues.' [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 722.) " 'The inference [that a crime has been committed] need not be "the only, or even the most compelling, one ... [but need only be] a reasonable one." ' " (*Ibid.*, quoting *People v. Jones* (1998) 17 Cal.4th 279, 301-302.) We agree with the People that the police officers' testimony of what D. reported to them regarding appellant's conduct was a sufficient quantum of evidence to provide the independent corroboration needed to support the convictions.

Finally, we reject appellant's further argument regarding count 3 that "generalized evidence that a person committed a crime at some undefined moment in history is not sufficient evidence on which to sustain a conviction" for an act allegedly occurring between January 1, 2008, and March 11, 2008. That is not an accurate characterization of the entire evidence relevant to count 3. When D. described the oral copulation that appellant committed on March 11, 2008, she told the police officers that appellant had done the same thing "lots" of times before. Additionally, appellant admitted that he had previously touched D. in the same manner as he did on March 11, 2008, "[t]hree or four" times, all during the one-month period before March 11, 2008. Thus, the evidence was sufficient to support appellant's conviction on count 3 of a lewd or lascivious act committed against D. between January 1, 2008, and March 10, 2008.

Viewing the evidence in the light most favorable to the judgment, we conclude that there was substantial evidence presented at trial that was sufficient to support appellant's convictions on counts 2 and 3.

(LD 4, 9-11.)

### B.  <u>Analysis</u>

To determine whether a conviction violates the constitutional guarantees of due process of law because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 20-21 (1979); <u>Windham v. Merkle</u>, 163 F.3d 1092, 1101 (9th Cir. 1998); <u>Jones v. Wood</u>, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light that is the most favorable to the prosecution.  <u>Jackson</u>, 443 U.S. at 319; <u>Jones</u>, 114 F.3d at 1008.  It must be recognized that it is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  <u>Jackson v. Virginia</u>, 443 U.S. at 319; <u>Jones</u>, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict.  <u>United States v. Mares</u>, 940 F.2d 455, 458 (9th Cir. 1991).  Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence. <u>United States v. Lennick</u>, 18 F.3d 814, 820 (9th Cir. 1994); <u>United States v. Stauffer</u>, 922 F.2d 508, 514 (9th Cir. 1990); <u>see, Jones v. Wood</u>, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence from a review of the record.  <u>Jackson</u> at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101.  However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law.  Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per curiam).  For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts.  Id.

Further, under the AEDPA, federal courts must apply the standards of Jackson with an additional layer of deference.  Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2062 (2012); Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable application of the Jackson standards to the facts of the case.  Coleman v. Johnson, 132 S.Ct. at 2062; Juan H. v. Allen, 408 F.3d at 1275.  The determination of the state court of last review on a question of the sufficiency of the evidence is entitled to considerable deference under 28 U.S.C. § 2254(d).  Coleman v. Johnson, 132 S.Ct. at 2065.

Here, the state court articulated legal standards that are consistent with the pertinent Jackson standards.  With respect to a lewd act on March 11, 2008, as charged in the second count, Detective Montellano testified to the victim's report, made about an

26

hour after officers responded to the residence, that Petitioner had pulled down her pants and had touched her on her private parts in addition to licking her. This corroborated Petitioner's admissions that he pulled down the victim's pants and touched the outside of her vagina and her butt with his hand in addition to putting his mouth on her vagina. A jury could reasonably find that Petitioner touched the child with specific intent and thus was guilty of committing the offense.

Likewise, with respect to a lewd act during the time preceding March 11, 2008, as charged in the third count, Petitioner's admission that he had orally copulated the victim three or four times during the previous month was corroborated by the victim's report to Officer White made soon after the event to the effect that Petitioner had put his tongue on her vagina a lot of times. A jury could reasonably find that Petitioner touched the child with specific intent and thus was guilty of committing the offense.

The victim's reports to the officers were consistent with the gist of the victim's report to her mother, made immediately after the victim emerged from the bedroom, that Petitioner had done something involving his mouth and her vagina.

The state court reasonably concluded that this evidence was sufficient to support the conviction. Although it was within the province of the trier of fact to disbelieve the mother's and the officers' testimony and to give no credence to the victim's reports,

27

it was also possible for a jury reasonably to reject the victim's in-court testimony as the product of emotion in reaction to testifying against Petitioner in Petitioner's presence, and further to find that the victim's initial reports were credible.  The state court's decision was not an objectively unreasonable application of the Jackson standard.

Therefore, it will be recommended that Petitioner's claim or claims concerning the sufficiency of the evidence be denied.

VI.  Corpus Delicti Rule

Citing state law, Petitioner argues that the state court decision violated the corpus delicti rule that there must be independent evidence of each element of the crime before a confession is admitted.

Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).  The Court accepts a state court's interpretation of state law.  Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless it is determined that the interpretation is

untenable or a veiled attempt to avoid review of federal questions. <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication that the state court's interpretation of state law was associated with an attempt to avoid review of federal questions. Thus, this Court is bound by the state court's interpretation and application of state law. The state court's determination that there was no violation of the state's corpus delicti rule binds this Court.

Thus, Petitioner's state law claim concerning the corpus delicti should be dismissed.

VII. <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1)

29

the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court should decline to issue a certificate of appealability.

VIII.  Recommendations

In accordance with the foregoing, it is RECOMMENDED that:

1)  Insofar as Petitioner raises state law claims, the petition be DISMISSED for failure to state facts entitling Petitioner to relief in a proceeding pursuant to 28 U.S.C. § 2254; and

2)  The remainder of the petition for writ of habeas corpus be DENIED; and

3)  Judgment be ENTERED for Respondent; and

4)  The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 16, 2014**          /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE